**UNITED PRESBYTERIAN CHURCH IN the U.S.A., et al., Plaintiffs,**

v.

**Ronald Wilson REAGAN, et al., Defendants.**

**Civ. A. No. 82–1824.**

United States District Court, District of Columbia.

Oct. 20, 1982.

William H. Schaap, Washington, D.C., Frank E. Deale, Michael Ratner, Morton Stavis, New York City, for plaintiffs.

Vincent M. Garvey, Elisa B. Vela, Dept. of Justice, Washington, D.C., for defendants.

## MEMORANDUM

GESELL, District Judge.

This case involves the challenge by 36 named plaintiffs to the constitutionality of Executive Order 12333, signed by President Reagan on December 4, 1981. 46 Fed.Reg. 59941 (1981). The Order establishes the framework in which our governmental and military agencies are to effectuate the process of gathering foreign intelligence and counterintelligence information, and the manner in which intelligence-gathering functions will be conducted at home and abroad. Defendants are the President, the Attorney General, and the heads of various federal agencies charged with intelligence-related functions under the Order. Plaintiffs, who include a member of Congress, religious and political organizations, journalists, academics, and politically active individuals, claim that the Order usurps functions of Congress, violates the National Security Act, 50 U.S.C. § 403(d)(3), is unconstitutionally vague, authorizes intrusions upon their constitutionally protected rights, and "chills" the exercise of their rights of free expression and exercise of religion. The case is before the Court on defendants' motion to dismiss those claims for lack of subject matter jurisdiction which has been fully briefed and argued.[1]

Plaintiffs appear to be seeking a judicial determination of the constitutionality of the entire national intelligence-gathering system. In spite of the fact that the Order expressly provides that "[n]othing in this Order shall be construed to authorize any activity in violation of the Constitution or

---

1. A brief *amici curiae* was filed in this case by the Washington Legal Foundation, Senators Jeremiah Denton and Jesse Helms, and several Congressmen, in support of defendants' motion to dismiss.

statutes of the United States," Section 2.8, 46 Fed.Reg. 59952 (1981), they request a declaratory judgment that the Order is unconstitutional on its face and injunctive relief prohibiting the defendants from implementing any of its provisions. The Court is without jurisdiction to hear their claims for reasons set forth below.

The complaint viewed as a whole fails to allege that any plaintiff has suffered any injury in fact under the Order. Plaintiffs claim they are injured in that, because of the nature of their activities, they are in "imminent fear" that they "may be targeted" as sources of foreign intelligence under the Order and that such targeting may subject them to unconstitutional surveillance practices or limit their ability to perform their tasks. Plaintiffs further claim that the mere prospect of being targeted "chills" their exercise of a variety of constitutionally protected rights.

 It is a cornerstone of the American judicial system that the judicial power of the federal courts is limited by Article III of the Constitution to the resolution of "cases" and "controversies." At a minimum, the Constitution requires that a plaintiff invoking the Court's authority demonstrate that he has personally suffered an actual or threatened injury and that it can be traced specifically to the challenged action and redressed by a favorable decision. *Valley Forge Christian College v. Americans United for Separation of Church and State*, 454 U.S. 464, 471–76, 102 S.Ct. 752, 757–61, 70 L.Ed.2d 700 (1982).

 Plaintiffs in this case have failed to allege any such redressable concrete injury attributable to Executive Order 12333. They allege "fear" and "concern" that they "may be targeted" for intelligence-gathering activities, but introduce no evidence to support their claim—beyond allegations that some of the plaintiffs had been subject to possibly illegal surveillance for past ac-

tivities, in the past before the Order was promulgated. Nor do they make any allegations to support the assumption that any intelligence-gathering activities that may take place pursuant to the Order in the future will be illegal. Plaintiff has conceded at oral argument that much of the activity authorized by the Order is well within the strictures of the Constitution and laws of the United States.

Similar claims regarding Executive Order 12333 were made and rejected in this Circuit in *Halkin v. Helms,* 690 F.2d 977, (D.C. Cir.1982).[2] Plaintiffs in that case alleged that Executive Order 12333 authorized unconstitutional intelligence-gathering procedures, that plaintiffs' activities were such that they had in the past, and were in the future, "capable of attracting" the attention of intelligence-gathering agencies, and plaintiffs were consequently chilled in the exercise of their First Amendment rights. The Court found that plaintiffs had failed to allege any injury in fact and lacked standing to challenge the Order. *Halkin, supra,* at 1002. That case is decisive here.

Plaintiffs argue that before this Court finds they lack standing for failure to allege injury in fact, they should be given the opportunity to present more detailed affidavits in order to show such injury in fact did occur. Defendants' motion to dismiss was filed on August 26, 1982. On plaintiffs' representation in its motion for extension of time, filed September 2, that additional time was needed to consult with individual plaintiffs and gather information sufficient to allege a clear injury in fact, the Court granted plaintiffs an additional month in which to respond to defendants' motion. Plaintiffs thus had ample opportunity to present particular claims of injury which would confer standing, and they have failed to do so.

 Plaintiffs also contend that they should be granted the discovery denied by

---

**2.** Plaintiffs' claims in that case were originally made under Executive Order 12036, 43 Fed. Reg. 3674 (1978). That Order was superseded by Executive Order 12333 late in 1981. Plaintiffs requested the Court to consider their argu-

ments as applying to Executive Order 12333, on the grounds that "the more recent Order if anything permits expansion of the scope of foreign intelligence activity." *Halkin, supra,* at 1001.

the Court in an Order filed September 13, in order to uncover evidence to support their claims. Plaintiffs' "motion" for production of documents, filed August 13, 1982, requested discovery of the broadest and most general sort. Plaintiffs requested production of all documents which described the manner in which the Federal Bureau of Investigation and the Central Intelligence Agency would carry out their responsibilities under Executive Order 12333, and all documents relating to which plaintiffs had been or would be "targeted" and what information on them had been developed. Such a request is a "fishing expedition" of the most obvious kind, and this Court will not permit plaintiffs, in the face of a motion to dismiss for lack of subject matter jurisdiction, to undertake such a general search in the hope that some cause of action might be uncovered. Plaintiffs had opportunity to request reasonable, more limited discovery and failed to do so. No further discovery is appropriate.

One of the plaintiffs, Congressman Ronald V. Dellums, has asserted an individual claim related to his interest as a member of Congress. He contends that the President's promulgation of Executive Order 12333 without express congressional authorization is a violation of his constitutional right under Article I to legislate, "thereby diminishing the powers of each Senator and Congressman to vote and participate in the determination of matters which the Constitution entrusts to Congress." Complaint filed June 30, 1982, at ¶ 11. Congressman Dellums further claims that Congress has expressly prohibited much of the conduct authorized by the Order by enacting the National Security Act, 50 U.S.C. § 403(d)(3), and that accordingly its legislative authority is frustrated.

■ Defendants suggest the Congressman lacks standing but it is not necessary for this Court to determine that issue under traditional standing doctrine, an approach that has apparently fallen into disfavor in this Circuit so far as suits by federal legislators are concerned. *Riegle v. Federal Open Market Committee*, 656 F.2d 873, 880 (D.C. Cir.), *cert. denied*, 454 U.S. 1082, 102 S.Ct. 636, 70 L.Ed.2d 616 (1981). The Court must decline to exercise its jurisdiction in this case under the doctrine of equitable discretion, *Riegle*, *supra* at 881–82. Under this more flexible test, "[w]here a congressional plaintiff could obtain substantial relief from his fellow legislators through the enactment, repeal, or amendment of a statute, [the] court should exercise its equitable discretion to dismiss the legislator's action." *Riegle*, *supra* at 881.

The equitable discretion test fits this case. Nothing in Executive Order 12333 precludes Congress from enacting general legislation concerning the gathering of intelligence by federal agencies or the scope of the Executive's authority to regulate it.[3] A similar claim was involved in *Harrington v. Bush*, 553 F.2d 190 (D.C.Cir.1977). In that case, a member of the House of Representatives claimed that alleged illegal CIA intelligence-gathering activities "constitute[d] a blatant usurpation and disregard of and challenge to the role of Congress in the constitutional scheme," *Harrington*, *supra* at 200 n. 41, and that his past and future votes on CIA appropriations and his general effectiveness as a legislator had been impaired. The Court rejected those claims, noting that "[t]he only restraints on appellant Member's legislative activities concerning the CIA are those imposed by the House of Representatives through its own rules." *Harrington*, *supra* at 214. As in the *Harrington* case, Congressman Dellums' remedy lies with his fellow legislators.

As to Congressman Dellums' argument that the Order directly contravenes the National Security Act, 50 U.S.C. § 403(d)(3), that claim was brought into sharper focus at oral argument. Section 403(d)(3) provides that it is the duty of the CIA "to correlate and evaluate intelligence relating to the national security.... *Provided,*

---

**3.** Indeed, the Order directs the heads of the CIA and other intelligence agencies to cooperate with Congress in its exercise of oversight of intelligence activities. Section 3.1, 46 Fed.Reg. 59952 (1981).

That the Agency shall have no ... internal-security functions." Dellums argues that Executive Order 12333 violates the statute because it authorizes the CIA to "[c]onduct special activities approved by the President," Section 1.8(e), 46 Fed.Reg. 59946, and further defines "special activities" as "activities conducted in support of national foreign policy objectives abroad which are planned and executed so that the role of the United States Government is not apparent...." Section 3.4(h), 46 Fed.Reg. 59952 (1981).

The precursor to the Order, Executive Order 12036 promulgated by President Carter on January 23, 1978, had defined "special activities" as "activities *conducted abroad* in support of national foreign policy objectives...." Section 4–212, 43 Fed. Reg. 3692 (1978) (emphasis added). Congressman Dellums argues that with the deletion of the phrase "conducted abroad," Executive Order 12333 authorizes the CIA to conduct domestic activities constituting "internal security functions" prohibited by the National Security Act, and thus frustrates the congressional attempt to preclude the CIA from internal security functions and "disenfranchises" Congressman Dellums by impairing his legislative vote on the issue.

Admittedly, deletion of the phrase "conducted abroad" from the definition of special activities may permit the CIA to engage in some domestic activities not authorized under the prior Executive Order 12036. But whether such activities would necessarily fall under the description of "internal security functions" as used in the Act is unclear. This Court is not faced with a situation in which the Executive has taken action which, on its face, directly contradicts statutory provisions legislated by Congress. Rather, the Executive has chosen to interpret "internal security functions" in one manner, and Congressman Dellums in another. It cannot be said that the Executive interpretation is, on its face, unreasonable. The Order does not by its terms directly authorize the CIA to perform internal security functions, nor can it be said that the Order authorizes conduct that

clearly falls within that rubric. Indeed, the Order by its terms expresses the intent it be in compliance with the Act. Section 1.8, 46 Fed.Reg. 59945. Under these circumstances, Congressman Dellums' remedy again lies with his fellow legislators, whom he may attempt to persuade to clarify further the scope of the restrictions imposed by § 403(d)(3) of the Act.

In sum, this is not a case, as in *Kennedy v. Sampson,* 511 F.2d 430 (D.C.Cir.1974), where an Executive action has impaired the effect of a legislator's vote on a particular bill. Congressman Dellums' power to enact legislation on this issue remains unimpaired. Nor is this a case where claims of unconstitutional action would go unreviewed by the Court in the absence of congressional plaintiffs. *Riegle, supra* at 882. Any private citizen citing injury in fact could qualify for standing to challenge the Order if, indeed, some act taken pursuant to it served to deprive the plaintiff of constitutionally or statutorily guaranteed rights. As in *Riegle,* rendering a decision on the merits of Congressman Dellums' claim would pose a greater threat to the constitutional system than the exercise of judicial restraint, *Riegle* at 882, and the Court must decline to accept jurisdiction of Congressman Dellums' complaint.

■ The Court realizes that United States citizens who are involved in activities and events abroad may have serious concerns that their conduct will be misperceived and their constitutional rights infringed by federal intelligence-gathering agencies concerned with the growing tensions in world affairs and the increased sophistication of those who seek to undermine national security. The reach of the Constitution into this murky area is uncertain, and it is understandable that plaintiffs are anxious to be informed and to limit possible government action. It is not for the courts, however, to engage in abstract study and broad policymaking on these complex issues in the absence of any concrete facts or allegations of injury. This is particularly true where the matters at issue

involve national security and foreign affairs, areas uniquely committed to the political branches of government. *United States v. United States District Court*, 407 U.S. 297, 313, 92 S.Ct. 2125, 2134, 32 L.Ed.2d 752 (1971); *Harisiades v. Shaughnessy*, 342 U.S. 580, 589, 72 S.Ct. 512, 519, 96 L.Ed. 586 (1952). In these areas, it is for Congress and the President to make basic policy decisions and for the courts to consider the constitutionality of their application only in the light of clearly defined facts.

Sound prudential considerations as well as problems of standing and jurisdiction thus dictate that the Court proceed no further in this case. The complaint is accordingly dismissed.